L.T.D. Financial Services. Good morning, Your Honors. For the audience, it's good to have your public conversations once you're sure the door is closed. May it please the Court, my name is Dale Goldman and I represent L.T.D. Financial in this appeal. I want to try to address two issues with respect to the merits of the underlying case and then two issues with respect to class certification in the underlying case. The first issue with respect to the merits is the agreement that the plaintiff's cause of action against my client was fatally defective. This case relates to my client's attempt to collect from the plaintiff what the plaintiff alleges was a time-barred debt. There are two different Florida statutes, and the plaintiff's theory was that my client had failed to advise her that if she made a partial payment, it would reset the statute of limitations of the Florida law. There are two relevant sections of the Florida statute of limitations that are in play here. One is 95.051, which deals with what happens or what can restart the statute of limitations once the statute of limitations has expired. Under that section of the statute, there needs to be an acknowledgment or promise to pay in signed writing. The other section at issue is 95.04, which deals with restarting the statute of limitations on a debt where the statute of limitations has not yet expired. Under Florida law, a mere partial payment will restart the statute of limitations. If there's a 5-year statute of limitations and I pay after 3 years, it's 5 years from the date of that payment. Just so I can get the house in order in my own brain, before the statute of limitations has expired, partial payment restarts the block. After the statute of limitations has expired, your position is that not partial payment but only signed writing, in effect promising to pay the whole thing. Right. I honestly don't think there's a dispute on that issue, and I honestly don't believe that there's a dispute on the fact that the plaintiff's theory of the case proceeded under the wrong statutory section and was, therefore, fatally defective. Let me ask you about that. If the complaint had not cited Cattle v. McCarroll, would you be here today? Yes. Because if you look at the complaint, the only allegation in the complaint related to the concept, paragraph 3 of the complaint, here's what their complaint was regarding the letter. LTD fails to disclose to consumers that providing a partial payment of a time-barred debt could revive the collector's ability to take legal action to collect the balance. And that, it seems to me, is an adequate allegation under 95.04. And then they allege that there's a violation of the Fair Debt Collections Act. All of that seems to be pretty mainstream. So I don't see how you've got to appellate concern about that. But for your argument that they somehow narrowed their complaint by citing this Cattle case. Cattle. Is it pronounced Cattle or Cattle or McCarrolls? The argument, the statutory section that they cited, that they relied on for their legal theory, this partial payment revives a time-barred debt, applies only to debts that are not time-barred at the time of the partial payment. When they came to saying what the violation is, they said the violation is of the Fair Debt Collections Act. Right. Yeah, they said that. And that would then be a broad enough allegation to pick up a violation of, or the debt might be revised under Florida Law 95.04. They're too completely, it would be, let's say that. Your position that this is not a 95.04 case, this is a 95.01 case, that the limitations had already expired. So we're in 95.01, not 95.04? Exactly. And the fact that it's a statutory number is not the issue. The fact is that they were proceeding on the allegation that the debt was time-barred, but for statute of limitations and revival purposes, their legal theory was a partial time-barred debt, and that's simply not an accurate statement of Florida Law. A partial payment of a time-barred debt under Florida Law will not revive, restart, or have any effect on the statute of limitations. In order for a time-barred debt to be revived under Florida Law, there has to be an acknowledgement or a promise to pay in signed writing. But they have attached to their complaint this notice, or this Dunning Notice, and they're saying that notice is what violates this Florida Law, and when you look at that notice, it is, if it's under notice pleading alone, you look at that notice and you could say, I could understand that that includes a potential for a written acknowledgement of a previously time-barred complaint. It changes the entire character of the lawsuit, because then the question—I mean, because it's a class action case, because then when you go into, well, an acknowledgement and a promise to pay, then what does that mean? I mean, that was one of the issues that we argued with respect to the dispositive motions that we filed, is that that's not a clear-cut answer in and of itself. It's simply signing a check and sending it in. Is that enough? There seems to be case law in Florida that supports the notion that that's insufficient to revive a time-barred debt. What exactly does it take? I mean, so on that issue, it wasn't even clear. But we are entitled to notice of what their theory was, and when we filed our motion for summary judgment on this theory, they agreed that their theory was not pleaded correctly. They said, we agree that the Florida statute at issue, when the statute of limitations has already run on the underlying debt, is 95.04, okay? Okay. Forget about what happened pre-trial. How did the case go to the jury? Well, the case went to the jury like this. So this was the plaintiff's position at the dispositive motion stage, where there was an admission that there was a defect in the complaint. That's what this is. This is an admission that we're proceeding under the wrong legal theory. At no time subsequent to that did the plaintiff take any action to try to bring the complaint into compliance with what Florida law would be in order to be able to sustain a cause of action. Instead, at every moment leading up to trial, the plaintiff reiterated the position that partial payment of a time-barred debt revives the statute of limitations under Florida law. I guess I mean at trial. Did they talk about the Dunning notice, the tear-off coupon, all that stuff? No, because it never got to that point until after we had finished presenting the evidence. I had argued my Rule 50A motion raising this argument and several others, and then we got to the point of arguing jury instructions. Just while you're thinking, I mean, I would have thought that in order to prove the FDCPA violation, they know they've got to show that there was some misleading communication about the nature of the debt and the repayment, and so they would have maybe talked about partial—are you hiding rules about partial payment, or are you hiding rules about signed writings? Well, again, the only theory that they ever offered at any point in time, through the end of the evidence at trial and on the directed verdict, when I argued for directed verdict, I mean, the judge flat out said to them in response to my argument on the directed verdict that their theory of the case had been that partial payment revives the time-barred debt under Florida law. Hasn't that been the theory that you traveled on throughout the entirety of the case? And the response was yes. So what happened was when we got to the jury instructions, the plaintiff had proposed two separate jury instructions that said partial payment of a time-barred debt revives the statute of limitations under Florida law. There were two different jury instructions, but they both were materially the same. They were separate instructions, not exclusive. We objected to that on the theory that—our argument was it's not an accurate statement of Florida law. The judge then proposed his own jury instruction that was not suggested by either party, that was an accurate statement of the law, the written acknowledgment or agreement to pay in writing jury instruction. We objected to that on the basis that it was never the plaintiff's theory of the case. The plaintiff's theory of the case was from start to finish, partial payment revives a time-barred debt under Florida law. Notwithstanding the fact that the judge agreed that that wasn't an accurate statement of Florida law, the plaintiff's theory of the case was not accurate, he denied our Rule 50A motion and instead drafted his own jury instruction, which was the 95.051 jury instruction, and gave that to the jury. Did you ever tell the judge, Judge, we're being prejudiced by your interpretation of this complaint at this point because we have other discovery that we need if that's going to be their definition, and we'd like the trial postponed. Did you ever make a factual argument? I mean, I understand how you claim you were legally prejudiced because you think you got you. You think you got them. The original complaint, the way you read it, was wrong. But putting aside your legal gotcha, did you ever tell the court, hey, we are being factually prejudiced if you're changing, if you're clarifying or changing what this complaint is all about because we've got new discovery and we'd like an extension of time before the trial? Did I use that specific argument? I did not. Okay. The argument that we used was that this has been their consistent and unwavering theory of the case up through the point where I had argued. But you never argued that you were prejudiced factually by not having been able to develop some evidence and you needed more time. I never made that specific argument, and plaintiff never at any point in the case ever requested, even at the end of trial, to amend the complaint to change the theory of the case. If the plaintiff had gotten up and said, well, Judge, we want to amend the complaint at this point in time to conform to the evidence, at that point, that would have been an appropriate time for me to say, well, wait a minute. They've traveled on this theory the entire case. This is what the entire case has been about. This is what you certified the class on, this theory. So where do we go from here? Do we go back and redo class certification as well because now it's a completely new legal theory and we're going to have to do discovery on that? They never went down that road. They just sat back as the judge imposed his own new legal theory on the case and then proceeded to the jury under that new legal theory. When you say proceeded the jury under that new legal theory, what do you mean? Did they put on evidence that wears up with the instruction that the judge drafted? They got up during closing and held up the letter and said, there's a thing here on the bottom, and therefore, if you sign the thing, it would be – it would revive the debt, essentially. And I'll allow Mr. Leach to clarify that for me to the extent that's wrong. But yeah, I mean, it was not – again, I don't think it was our obligation to get up and say, well, wait a minute, if you're going to impose this jury instruction, we need to start over because it amends the complaint. I think it was incumbent upon the plaintiff at some point in time after recognizing in response to our motion for judgment on the pleadings that their case was fatally flawed to take action to correct the claim and the complaint. And they never did. Instead, we went to a jury with a complaint that says one thing and a jury instruction that says something entirely different. I think we've got your argument. If you want to eat into your rebuttal, that's fine, but I think the clock's got you. Thank you. You've reserved, Mr. Golden, five minutes, and we'll give you the full five minutes. May it please the Court. Thank you. David Leitz for Appellee Lizanella Baez. I want to pick up on what Judge Newsom was asking about how did this case – how did this issue get to the jury, and it is all about the payment coupon. And Mr. Golden is just incorrect in asserting that this wasn't brought up until after the close of evidence. I gave the opening argument in front of the jury, and I'd like to read that little part of that to the Court. I said, so what's this letter show? There's also a payment coupon down at the bottom here, and you're going to see when you look at this letter that this payment coupon is different from most payment coupons that you see. It's got the full amount of the debt. It doesn't have a line where you write in a partial payment. It's got the full amount of the debt. So this is the letter the plaintiffs are going to show you that we allege is a deceptive and misleading letter. And then I skip down and I say, so what's not in the letter? Well, what's not in the letter, folks, is any kind of warning about what happens if you make this partial payment and you acknowledge the debt. So the theory of the case that it was tried under from the opening statement until the closing statement was under Section 9504. Did you ever state that and somewhere there's going to be a signature? That's required also is acknowledging the debt in writing with your signature. I thought you were going to read something and somewhere there's a signature in here. I'm a little concerned about that because the form does not say you got a sign here anywhere. The argument is if you wrote a check, maybe that's a signature. But I find you're leaving me not very satisfied. Where did you address the signature requirement? We never specifically said anything about signature, Judge Eagle, and the reason for that is why the partial payment is important because the signature is on the check. If it's done by a check, but if it's done – if it's an electronic transfer of funds, if it's Apple Pay or if it's PayPal or something, there may not be any signature. So I'm – I mean, that's kind of the stepchild in this whole thing. I don't think you made that very clear even after you got all the help from the court. Well, this is – the point of the letter is that it's deceptive and misleading in that it gives these 34,000 Floridians the prospect that if they take the – what's offered to them under this letter, which is to basically take the payment coupon and send a check back in with it with a signed writing, that being the signed writing, that that is going to revive or restart the statute of limitations. It's going to bring the – Well, only if you've signed it. But – But you're saying that there – I mean, I know what your argument is. Your argument is that, yeah, we didn't talk about signature, but anybody would know there would be a substantial risk that people would sign either a return cover letter or a check or something else. But was that ever presented to the jury, that you need that factor as well? No, Your Honor, not specifically. Let me ask you about this. You said the following, if I have it right, in closing argument. Did you not? Did you explain to the jury, quote, under Florida law, if you make a payment on a time barred debt that acknowledges the debt in writing that's signed, well, then that – the debt's revived. LTD designed the letter in this way. Yes, Your Honor. And we did come back at the close of the evidence, and we mentioned the signature requirement in closing argument. It's clear that this case traveled under Section 95 overall. But you said nothing about the signature requirement in opening. Correct, Your Honor. We didn't – Other than just making this reference to the coupon and so on. Right. Yes, Your Honor. Is there any other reference to you acknowledging that debt had to be acknowledged in writing, that is to say it has to be signed, it has to be some written statement? Not to my knowledge, Your Honor. So you say that in closing argument? Yes, Your Honor. Okay. So you do present that theory in some sense to the jury. And it's clear. And the reason that Mr. Golden is incorrect, that we somehow needed to amend the complaint all along, is because we had all this motions practice, and the court, Judge Byron, told us repeatedly that the inaccuracy of the citation doesn't undercut the accuracy of the legal authority under which the case travels. By inaccuracy of the citation, does he mean 9504 instead of 9501? No, he just means Cato. Got it. So there was a citation to a case which traveled under the other statute, under 95.051, not under 95.04. And he's saying, well, okay, so you cited the wrong case, which would have no legal effect under the pleading standards under the federal rules. In fact, you shouldn't even really be citing a case in a federal court complaint under the federal rules. That's why I was curious whether if Cato, if really this case turns on the fact you cited a case in a complaint where legal citations typically don't appear, but the allegation in the complaint was the Fair Debt Collection Practice Act was violated. Did the complaint, putting aside Cato, did the complaint then say because of a violation of Florida Law 95.05, or did it just leave all of that out of there and just simply said that the Fair Debt Collection Act was violated? There was no statutory citation, Judge Ebel. And so if we look then at a notice pleading, it says you violated the Federal Fair Debt Collections Act. Here is the notice. And based on that, we think it's a violation. And then as you got to trial, you explained or the court helped you explain why that was a violation. Yes, Your Honor. And the court found repeatedly that the complaint traveled under 95.04. The court exhaustively looked at— When was the first time that the court made that finding? How early in the process did the court say, this is a 95.04 claim? When the court converted the motion for judgment on the pleadings to a motion for summary judgment and took up the motion for summary judgment at that point and denied it and told— When the court made that conversion, did LTD say, wait a minute, we need notice of this summary judgment? No.  And indeed— In fact, they had another summary judgment motion out there at the same time. Right. And then when the court entered its ruling, did LTD say, wait a minute, this was a conversion without the required notice in advance and we're unprepared because there's other evidence we would have and we've been sandbagged? Absolutely not, Your Honor. And that is exactly why they haven't established— How far in advance of trial did all of that happen? Months. Months and months. And I'm talking about the conversion into summary judgment, the ruling and the statement from the district court that they were traveling under 95.04. So it first happened—I don't have the exact date, but it was in response to the motion for judgment on the pleadings, which was filed July 12, 2016. The motion for summary judgment filed on August 1, 2016. And if memory serves, it happened either in late 2016 or at the very beginning of 2017. It being the ruling by the district court? Yes, Your Honor. And the trial itself? In May. May, June. So— How many months in? At least four— So you're between four and six months from the ruling on summary judgment and the clear statement of the conversion to the actual trial? That's— Yes, and there was— Would that be a fair statement of the time? That would be a fair statement, and there was also a motion for reconsideration filed by LTD where they basically said to the court, you're wrong, and the court came back and had two pages of explication. Was there any statement at any point from your colleague that, wait a minute, I don't know what's going on here, we're traveling under a new statute? No. Instead— I need more time, I got to do this, that, or the other thing? No, Your Honor. And indeed, the abuse of discretion cases for conversion and motion for judgment of the pleadings are all about cases where you didn't get notice of the conversion, the court just sort of does the conversion sua sponte, and then you can complain, well, they abused their discretion to convert this motion for judgment on the pleadings to a motion for summary judgment, and it's usually the party that's opposing the motion for summary judgment who finds itself making the abuse of discretion argument. But there's no case in the 11th Circuit where there was an abuse of discretion for converting a motion for judgment on the pleadings to a motion for summary judgment where it was the moving party that was on the losing end of that. But they never raised it, and this is part of the reason why we are really looking at this case under an abuse of discretion standard for the sufficiency of the allegations in the complaint, which are judged under Rule 8A. And the court, the trial court, the district court found repeatedly that the case traveled under 9504. They told that explicitly to LTD Financial, and rather than take any actions to protect their rights, such as seeking an interlocutory appeal, such as filing a Rule 50 motion and then seeking an interlocutory appeal on that, instead, they just let the case go to trial, and now we're in a different situation where we have this jury trial on the merits which precludes this court from looking again at the motion for summary judgment, and instead, we're left with looking at this after we have the record that's prepared at the trial. And the record at trial is that the plaintiffs presented the case under 9504. The trial court gave jury instructions that were consistent with 9504. LTD Financial doesn't even argue about the accuracy of the legal, about the jury instructions. And so when the jury gets the case and when the jury renders its verdict, it renders it under the right law, and it renders it with the facts that support its ruling, its judgment under the right law, under 9504. And so there's no error here, Your Honor. All this is is LTD Financial coming back and, again, trying to, as Judge Ebel said, do a You didn't say this right, and you miscited a case here. And we're going to try and hang you on that, even though we know, we have actual notice for sure that this case is traveling under 9504, that your theory of the case is that it's trying to revive time-barred debt by acknowledging with assigned writing and this partial payment. That's the theory of the case. We know that that's what's coming at us. We have full notice to be able to protect ourselves. We have full notice to be able to present evidence. And this goes to some of the other claims of error that LTD raises, which is about the sufficiency of the evidence relative to whether or not this was a consumer debt or whether or not the statutes of limitation had run. What LTD Financial basically chose to do as a trial strategy here is to say, you all plaintiffs don't have the goods. You didn't put up enough evidence. We're just going to, like, make that unilateral determination. And we're going to make that unilateral determination. And we are, as a defense strategy, going to put on no evidence, none. And as under the preponderance of evidence standard, basically, you had a situation where even if the plaintiffs had put on a scintilla of evidence for whether or not these were consumer debts, whether or not the statutes of limitations had run, that was enough. The scales were going to tilt in favor of the plaintiffs. Well, they didn't put on any affirmative evidence on that, but did they get evidence in by cross-examining your witnesses? No, Your Honor. There was no affirmative evidence and nothing conclusive relative to the cross-examination of our witnesses. The cross-examination of Ms. Baez basically elicited from her what she said in her deposition, which is she didn't remember specifically the purchases that she made using this credit card, didn't remember this specific credit card. However, under this Court's ruling in McCorriston, if the person thinks that they used it for consumer purposes only, that's enough evidence to show that it's consumer debt. And, again, Ms. Baez's testimony was clear as to other issues, that this card was in her own name, that she never had a business credit card, that she never used these credit cards for business purposes. There was plenty of evidence adduced from Ms. Baez's testimony that support the finding of the jury that this was a consumer debt. And so, basically, again, we're left with LTD making this ostrich maneuver decision that they're going to stick their head in the sand and say, you didn't put on enough evidence, the jury found differently, and now they come before this Court and try and complain about that. I just wanted to briefly talk about the Pantoja case and how this case is essentially the same as Pantoja. And the reason that there's an FDCPA violation here is because LTD Financial, in their Dunning letter, didn't warn of the possibility of reviving or restarting the statute of limitations. And that's identical to the Seventh Circuit's case in Pantoja and also case law from the Third, Fifth, and Sixth Circuits. And there's this argument about whether or not the CFPB language, if they put that sort of warning in here, somehow insulates them or Mirandizes them. The courts have rejected that. And this all becomes a very fact-specific inquiry. So, at one point in the case, just before the trial commenced, the plaintiffs, Ms. Baez, the appellee here, actually filed a Rule 50A motion and said, Your Honor, under Pantoja, you should actually rule in favor of us, because under the plain language of this letter, they don't have any warning about reviving this time-barred debt, and so you should rule for us under Pantoja. And the district court said, No. First of all, it's Seventh Circuit opinion. That's not binding on us. But secondly, and more importantly, this is all really fact-specific. I see my time is up. If I just may finish my thought. Sure. Thank you, Your Honor. This is all really fact-specific. It all really should just go to the jury. And that's what happened here. And relative to Your Honor's comments on the case just prior to this one, the jury can do wisdom here and did do wisdom here. They got this complex issue of fact, which is you have this particular Dunning letter with all these little component parts, settlement language, payment coupon, partial payment plans, and that is where the jury comes in to say, Yes, this is deceptive and misleading under the FDCPA. That's what happened here. LTD is not happy with the result. But under the law, the court should affirm the ruling of the jury and affirm the ruling of the district court. Thank you very much. Thank you, Your Honor. Plaintiff has planned two sides of the same coin. The argument here before this court is, well, yeah, that theory, it was amended when they filed their motion for summary judgment and the judge ruled on it, which was three months before trial. There was nothing that acted as an amendment of the complaint to insert it. Was it clear, though, just help me factually, was it clear substantially before the trial started that this case was moving forward under 9504? Absolutely not. Everything that the plaintiff filed with the court after the supposed ruling reshuffling the deck stuck to the old theory. That's not what I'm asking you. Did not the trial judge tell you that this case was a 9504 case? He told me that what we got from the judge in the ruling was that I don't disagree with you, but I'm not granting your motion. There was nothing in there that, other than saying that it seemed to, the order seemed to be more about the fact that, seeing that we were arguing that because they cited the Cato case, that was the defect in the plaintiff's case. And it never was. It wasn't about the citation. It was about the theory that they cited the case to support. So the only notice we had going to trial was this case was being tried on the claim and the complaint, because that's what everything the plaintiff submitted after the dispositive motion was ruled upon was. I take it there was a pretrial stipulation in this case. There was. Did the pretrial stipulation reference 9504? The pretrial stipulation was the same thing that the complaint was. It was partial payment on a time-barred debt. Is that a no? That's a no. Nothing changed. So there was no reference in the pretrial stip that this case was proceeding under 9504? 90, that, no, there was not. The only time that became an issue is when the judge decided to give his jury instruction instead of the one the plaintiff had asked for, which the plaintiff had asked for two jury instructions that were partial payment of a time-barred debt revives the debt. Well, when you prepared a pretrial stip, I take it you did. I just haven't looked at it. I will. That was a joint stip or two separate stips? It was a joint stipulation. Did it not reference the appropriate body of law? Did it not make reference to 9504? When I look at it, am I going to find a reference to 9504 or am I not going to find it? You're not going to. We cited ad nauseum in our reply brief. All the instances where the plaintiff in leading up to trial reasserted that her cause of action was partial payment on a time-barred debt revives the statute of limitations under Florida law. Let me ask the question this way. When you submitted proposed jury instructions to the judge and then the judge gave you a set of instructions, did they plainly reference 9504 at that point? I'm talking about the instructions. They didn't contain the number. Right, but you could not read the instruction and come away with any conclusion other than that the district judge was referring to 9504. I could not come away with any other conclusion other than that, along with the conclusion that the judge had decided in recognition that the plaintiff's claim was fatally flawed. Did you object at that point to the instruction? Here's what I – and it's in the – Let me ask just a simple answer. Yes, I did. No, I didn't. Okay, now tell me what you said. This has never been the plaintiff's theory of the case, Your Honor. The theory of this case has been very specific. They have consistently and unwaveringly taken the position that their legal theory in this case is that mere partial payment after the statute of limitations has expired under Florida law revives the debt. This jury instruction, the one that he proposed, the one on acknowledgement in writing, is an accurate statement of Florida law, but it is not in any way reflective of what plaintiff's case has been. And I can cite chapter and verse every situation when, including up into the pretrial statement where plaintiff said this is our theory of the case, partial payment after time barred debt revives the debt under Florida law. Plaintiff's theory of the case is fatally defective because it's not an accurate statement of Florida law, and so your jury instruction is legally accurate but not applicable to this case because it's not plaintiff's theory of the case. That was my objection. And this, we argued jury instructions obviously after the Rule 50A, and one of the arguments I made was the same arguments I'm making now, this same argument, and in getting a response from plaintiff's counsel at that time, the court asked this question. Didn't your complaint travel under the very specific theory that the debt was past collectability due to the statute of limitations, therefore the debt was revived by soliciting payment? I think that's been the theory. This is what we're done. But that clearly refers to the correct 95.04. I mean all you've been reading has been saying over and over again to time barred debt, to time barred debt. That's what's been in this case. 95.04 deals with time barred debt. 95.05 deals with debt that is not yet time barred. So it seems to me that you're not helping yourself very much because the references over and over are we're dealing with a Florida statute that talks about payments on time barred debt. Exactly. And so that is 95.04, which was what went to trial. And the one thing that nobody seems to focus on is it has to be a little bit more than time barred debt. It has to be a signature ratifying that debt. But it couldn't possibly be referring to 95.05 because that's non-time barred debt. So it seems to me you had at that point to notice, hey, there's a disconnect here. They couldn't possibly be talking about 95.05 because that deals with non-barred debt and looked all over and over and over there saying it is time barred debt that's been revived. You're right and you're wrong. Tell me why I'm wrong. I'm not really interested in why I'm right. The reason you're wrong is because you're right that 95.04 deals with time barred debt. But they mistakenly or whatever pleaded the case under the other statute, and that's the one they decided to proceed on. And that's what their jury instructions, not mine, their jury instruction was partial payment of a time barred debt revives the statute of limitations under Florida law. And we objected to that. And the judge recognized that that was a problem because it wasn't an accurate statement of Florida law, despite the fact that that was their theory of the case. And that was my argument. You're right, Judge. It's not an accurate statement of Florida law. Their theory is therefore fatally defective, and we're entitled to motion for judgment on the pleadings, and in that trial we're entitled to Rule 58 judgment as a matter of law because the legal theory that they chose and proceeded on all the way through trial was this one. And if you want further evidence of that, Mr. Leitz got up and argued about the Pantoja case from the Seventh Circuit. The Pantoja case says what? That if you send a letter on a time barred debt under Illinois law and you don't tell them that partial payment will revive the debt, that's an FDCPA violation. But guess what? Under Illinois law, mere partial payment of a time barred debt revives the statute of limitations. So at trial they were arguing they were entitled to a directed verdict at that time because of the Pantoja case. But that's not the law in Florida, so they never abandoned that. They never did anything other than – Counsel, I'm just going to ask you to bring your remarks to a conclusion if you could. It was fatally defective from start to finish, and the only time it ever got quote unquote corrected is when the judge took it upon himself to force a jury instruction on the parties that was never requested by the plaintiff and was inconsistent with plaintiff's theory of the case. Thanks very much, Counsel, and thank you both for your efforts. This court will be adjourned until 9 a.m. tomorrow morning.